## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Ronni L. Brown

     Plaintiff,

   -against-

Equifax Information Services, LLC;
Experian Information Solutions, Inc.;
TransUnion, LLC;
Shellpoint Mortgage Servicing;
NewRez LLC dba Shellpoint Mortgage Servicing; and
John Does 1-25;

     Defendant(s).

Case No.: 0:21-cv-60647

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Ronni L. Brown, by and through her attorneys, and as for her Complaint against Defendants Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); TransUnion, LLC ("TransUnion") (Equifax, Experian, and TransUnion each a "Bureau" and collectively "Bureaus"); Shellpoint Mortgage Servicing ("Shellpoint"), NewRez LLC dba Shellpoint Mortgage Servicing ("NewRez") (Shellpoint and NewRez, "Furnisher"), respectfully sets forth, complains, and alleges, upon information and belief, the following:

1.  Plaintiff brings this action for damages arising from the Defendants' violations of 15 U.S.C. § 1681 *et seq.*, also known as the Fair Credit Reporting Act ("FCRA").

### JURISDICTION AND VENUE

2.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as well as 15 U.S.C. § 1681p *et seq.*

3.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred here, the property around which this action arises is located here, and the Defendants transact business here.

## PARTIES

4.      Plaintiff is a resident of the State of Florida, County of Broward.

5.      At all times material hereto, Plaintiff was a "consumer" as defined under 15

U.S.C. § 1681a (c).

6.      Defendant Equifax Information Services, LLC is a consumer reporting agency as

defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this

judicial district.

7.      Equifax is a Georgia corporation registered to do business in this State and may

be served with process upon its registered agent at Corporation Service Company, 1201 Hays

Street, Tallahassee, FL 32301-2525.

8.      Equifax is a consumer reporting agency that compiles and maintains files on

consumers on a nationwide basis and is regularly engaged in the business of assembling,

evaluating, and disbursing information concerning consumers to third parties for the purpose of

furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

9.      At all times material hereto, Equifax disbursed such consumer reports to third

parties under a contract for monetary compensation.

10.     Defendant Experian Information Solutions, Inc., is a consumer reporting agency

as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in

this judicial district.

11.     Experian is an Ohio corporation registered to do business in this State, and may

be served with process upon its registered agent at c/o CT Corporation System, 1200 South Pine

Island Rd., Plantation, FL 33324.

12.     Experian is a consumer reporting agency that compiles and maintains files on

consumers on a nationwide basis and is regularly engaged in the business of assembling,

evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

13.     At all times material hereto, Experian disbursed such consumer reports to third parties under a contract for monetary compensation.

14.     Defendant TransUnion, LLC, is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

15.     Defendant TransUnion is a Delaware corporation registered to do business in this State, and may be served with process upon its registered agent at The Prentice-Hall Corporation System, Inc., 1201 Hays Street, Tallahassee, FL 32301.

16.     At all times material hereto, TransUnion is a consumer reporting agency regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as said term is defined under 15 U.S.C. § 1681a(p) to third parties.

17.     At all times material hereto, TransUnion disbursed such consumer reports to third parties under a contract for monetary compensation.

18.     Defendant Shellpoint Mortgage Servicing is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2 with an address at 75 Beattie Place, Suite 300, Greenville, SC 29601.

19.     Defendant NewRez LLC dba Shellpoint Mortgage Servicing is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2 with an address for service at Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525.

20.     John Does 1-25, are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action.

## FACTUAL ALLEGATIONS

21.     Plaintiff incorporates the above allegations as if set forth here.

### Background

22.     Some time prior to 2008, Plaintiff allegedly took out a loan subject to a mortgage for property located at 1025 NW 121st Lane, Coral Springs, FL 33071 ("Property").

23.     Plaintiff allegedly defaulted on this loan (the "Account") in 2008 and has not made any payments since.

24.     Plaintiff abandoned the Property in 2008.

25.     The last payment Plaintiff made on the Account was in 2008.

26.     Sometime in early 2010, foreclosure proceedings were commenced on the Property by the creditor.

27.     The foreclosure was ultimately unsuccessful in proceeding to a judgment and sale.

28.     Upon information and belief, another lienholder, non-party The Isles Association, Inc., foreclosed on the Property in 2011.

29.     It is unclear to Plaintiff what happened with the Property since then but it appears the property was sold.

30.     It is unclear to Plaintiff how much the Property was sold for and who received the proceeds of the sale, but no amount of this sale went to the Plaintiff.

31.     The alleged owner of the mortgage commenced another foreclosure proceeding on the Property on or about February 19, 2019.

32.     In that action, it was claimed that there remained a balance of $499,658.86 on the Account for the Property.

33.     The foreclosure action named as defendants, inter alia, the current alleged owner of the Property, as well as any potential current tenants, and finally the Plaintiff.

34.     As of the date of this Complaint, the foreclosure action commenced in 2019 is still ongoing.

<u>Furnisher's Improper Actions</u>

35.     On or about February 1, 2020, Furnisher began servicing the loan.

36.     For the first time in relation to the Account, in or about April 2020, Furnisher reported the alleged debt on Plaintiff's credit report.

37.     Despite that the alleged default occurred in 2008, more than a decade earlier, Furnisher reported the debt as if the default occurred in April 2020.

38.     This improper reporting damaged Defendant, inter alia, by significantly damaging her credit rating.

<u>First Dispute and Bureaus' Violation(s)</u>

39.     On information and belief, on a date better known to each Bureau, they prepared and issued credit reports concerning the Plaintiff that included inaccurate and materially misleading information relating to the Account.

40.     The information furnished by Furnisher and published by each Bureau improperly, falsely, and inaccurately characterizes Plaintiff's Account information.

41.     Each Bureau violated 15 U.S.C. § 1681c which prohibits reporting of accounts placed for collection or charged to profit and loss which antedate the report by more than seven years.

42.     The Bureaus have been reporting this improper and inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

43.     Shortly after becoming aware of the improper reporting of this Account, Plaintiff sent disputes to the Bureaus disputing the Furnisher-reported debt as inaccurate and untimely.

44.     Despite the dispute by the Plaintiff that the information on her consumer report was inaccurate with respect to the disputed account, each Bureau did not conduct a reasonable investigation or timely evaluate or properly consider any of the information, claims, or evidence of the Plaintiff, and did not timely substantially and reasonably verify that the derogatory information concerning the disputed account was accurate.

45.     Had the Bureaus done a proper investigation it would have been revealed that this account has been inactive for well over seven years.

46.     Bureaus violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's dispute letter.

47.     Bureaus violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the dispute to Furnisher or, in the alternative, if each Bureau did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

<u>Equifax Violation(s)</u>

48.     On information and belief, on a date better known to Defendant Equifax, it prepared and issued credit reports concerning the Plaintiff that included inaccurate and materially misleading information relating to the Account.

49.     Despite Plaintiff's dispute, the information furnished by Furnisher and published by Equifax falsely and inaccurately characterizes Plaintiff's Account status and amount.

50.     On Plaintiff's Equifax report, the Account payment status was listed as 120-149 Days Late and a reported past-due balance of $771,282.00.

51.     However, this account is older than seven years and should not have appeared on Plaintiff's credit report at all.

52.     The last payment Plaintiff made on the Account was in 2008.

53.     The listed balance was also incorrect.

54.     It was incorrect, inter alia, because the creditor had waived at least $162,763.27 of the $577,911.46 unpaid principal balance in or about October 2018.

55.     This waiver was done as part of a misguided attempt to get around the statute of limitations for foreclosure.

56.     The tradeline is inaccurate and misleading as makes it look like it was first delinquent only in the last 120-149 days, when in fact this is a very old account.

57.     Equifax reported this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.


Second Dispute and Experian Violation(s)

58.     On information and belief, on a date better known to Defendant Experian, it prepared and issued credit reports concerning the Plaintiff that included inaccurate and materially misleading information relating to the Account.

59.     The information furnished by Furnisher and published by Experian falsely and inaccurately characterizes Plaintiff's Account status and amount.

60.     At this point, and despite Plaintiff's first dispute, Plaintiff's Experian report still listed the Account as reported in April 2020 with a status of "FS" (foreclosure started) and a reported past-due balance of $775,718.00.

61.     However, this account is older than seven years and should not have appeared on Plaintiff's credit report at all.

62.     The listed balance was also incorrect.

63.     It was incorrect, inter alia, because the creditor had waived at least $162,763.27 of the $577,911.46 unpaid principal balance in or about October 2018.

64.     This waiver was done as part of a misguided attempt to get around the statute of limitations for foreclosure.

65.     The tradeline is further inaccurate and misleading as the reporting makes it appear as if it was first delinquent in April 2020, when in fact this is a very old account.

66.     Moreover, the reporting as "FS" (foreclosure started), for April 2020, made it look like the foreclosure started then when in reality the first foreclosure was in 2010 and the more recent foreclosure was initiated in February of 2019.

67.     Lastly, the date of status is incorrect.

68.     Specifically, the tradeline lists the date of status as April 2020. In fact, the account in question was delinquent since 2008, with no change in status as it relates to the Plaintiff since then.

69.     Tradelines have a number of fields which convey a significant amount of information to prospective creditors and which directly affect credit scores.

70.     The Date of Status or Status Updated date field represent the day a debt is deemed uncollectible and thus charged off. Toliver v. Experian Info. Solutions, Inc., 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013).

71.     The Date of Status corresponds to a separate Status segment of the tradeline. The Status segment reveals various forms of information concerning the tradeline.

72.     The Date of Status should remain uniform throughout each credit report disclosing the tradeline as this date does not change.

73.     Defendant Experian improperly updated the activity status date, which falsely made the account appear as a more current liability, directly lowering the Plaintiff's credit score.

74.     Experian has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

75.     Plaintiff again notified Experian that she disputed the accuracy of the information Experian was reporting on or around August 20, 2020, specifically stating in a letter sent to Experian that she was disputing the negative reporting of this tradeline.

76.     In her dispute, Plaintiff included a letter from Furnisher confirming these inaccuracies.

77.     Despite the dispute by the Plaintiff that the information on her consumer report was inaccurate with respect to the disputed account, Experian did not conduct a reasonable investigation or timely evaluate or properly consider any of the information, claims, or evidence of the Plaintiff, and did not timely substantially and reasonably verify that the derogatory information concerning the disputed account was accurate.

78.     Experian violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's dispute letter.

79.     Experian violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the dispute to Furnisher or, in the alternative, if Experian did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

80.     Furthermore, in response to Plaintiff's dispute, Experian changed the status of the delinquency to 180 days late as of April 2020 although April 2020 is the first date the debt even appears on Plaintiff's report.

81.     Experian also changed the foreclosure date to reflect that it was commenced in July 2020 although no foreclosure action was commenced in 2020.

82.     Experian did not remove the tradeline.

83.     Experian did not correct the balance.

84.     Notwithstanding Plaintiff's efforts, Experian continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

## Second Dispute and TransUnion Violation(s)

85.     On information and belief, on a date better known to Defendant TransUnion, it prepared and issued credit reports concerning the Plaintiff that included inaccurate and materially misleading information relating to her Account.

86.     The information furnished by Furnisher and published by TransUnion falsely and inaccurately characterizes Plaintiff's account status and amount.

87.     At this point, and despite Plaintiff's first dispute, on Plaintiff's TransUnion report the Account payment status was listed as 120-149 Days Late and a reported past-due balance of $775,718.00.

88.     However, this account is older than seven years and should not have appeared on Plaintiff's credit report at all.

89.     The last payment Plaintiff made on the Account was in 2008.

90.     The listed balance was also incorrect.

91.     It was incorrect, inter alia, because the creditor had waived at least $162,763.27 of the $577,911.46 unpaid principal balance in or about October 2018.

92.     This waiver was done as part of a misguided attempt to get around the statute of limitations for foreclosure.

93.     The tradeline is inaccurate and misleading as makes it look like it was first delinquent only in the last 120-149 days, when in fact this is a very old account.

94.     TransUnion has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

95.     Plaintiff notified TransUnion that she disputed the accuracy of the information TransUnion was reporting on or around August 20, 2020, specifically stating in a letter sent to TransUnion that she was disputing the negative reporting of this tradeline.

96.     In her dispute, Plaintiff included a letter from Furnisher confirming these inaccuracies.

97.     Despite the dispute by the Plaintiff that the information on her consumer report was inaccurate with respect to the disputed account, TransUnion did not conduct a reasonable

investigation or timely evaluate or consider all of the information, claims, or evidence of the Plaintiff, and did not timely make an attempt to substantially reasonably verify that the derogatory information concerning the disputed account was accurate.

98.     TransUnion violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's dispute letter.

99.     TransUnion violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the dispute to Furnisher or, in the alternative, if TransUnion did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

100.    In response to Plaintiff's dispute, TransUnion did not correct the balance.

101.    Instead, TransUnion changed the balance to another incorrect amount of $499,658.00.

102.    This amount is also incorrect, inter alia, because the creditor had waived at least $162,763.27 of the $577,911.46 unpaid principal balance in or about October 2018.

103.    TransUnion did not remove the tradeline.

104.    Additionally, TransUnion did not correct the stated length of delinquency.

105.    Finally, TransUnion failed to respond to the Plaintiff dispute, despite being required to do so under the law.

106.    Notwithstanding Plaintiff's efforts, TransUnion continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

Furnisher's Violation(s)

107.    It is believed and therefore averred that Equifax, Experian, and or TransUnion notified Defendant Shellpoint and/or NewRez of the Plaintiff's disputes.

108.    Upon receipt of the disputes of the account, Furnisher failed to timely conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed Account.

109.    As of the date of the filing of this Complaint, Furnisher continues to furnish credit data which is inaccurate and materially misleading.

Damages

110.    Defendants' erroneous reporting affected and continues to affect Plaintiff's creditworthiness and credit score.

111.    As a result of Defendants' failure to comply with the FCRA, Plaintiff has been damaged.

112.    The Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

113.    Due to Defendants' actions Plaintiff was denied the following applications for credit:

      a.    A Mastercard from Citibank, N.A.;

      b.    An American Express card;

      c.    A home loan from Quicken Loans, LLC;

      d.    A home loan from JP Morgan Chase Bank, N.A.

      e.    A Visa card from JP Morgan Chase Bank, N.A.

114.    These denials caused Plaintiff to suffer tangible and intangible losses of lack of available credit for purchases and a home mortgage.

### FIRST CAUSE OF ACTION
#### (Willful Violation of the FCRA as to the Bureaus)

115.    Plaintiff incorporates the allegations contained in paragraphs numbered 1-114 above as if set forth here.

116.    This is an action for willful violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

117.    The Bureaus violated 15 U.S.C. § 1681e by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that the Bureaus maintained or furnished concerning the Plaintiff.

118.    The Bureaus have willfully and recklessly failed to comply with the Act.

119.    The failure of the Bureaus to comply with the Act include but are not necessarily limited to the following:

a)  The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

b)  The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

c)  The failure to promptly and adequately investigate information which the Bureaus had notice was inaccurate;

d)  The continual placement of inaccurate information onto the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

e) The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised the Bureaus to delete;

f) The failure to take adequate steps to verify information the Bureaus had reason to believe was inaccurate before including it in the credit report of the consumer; and

g) The failure to provide notice of a dispute to the furnisher or, in the alternative, the failure to provide Plaintiff all relevant information received from the furnisher in response to a dispute.

120.     As a result of the conduct, action and inaction of the Bureaus, the Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

121.     The conduct, action and inaction of the Bureaus was willful rendering the Bureaus liable for actual, statutory and punitive damages in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681n.

122.     The Plaintiff is entitled to recover reasonable costs and attorney's fees from each Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Ronni L. Brown, an individual, demands judgment in her favor against each Bureau, for damages together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681n.

## SECOND CAUSE OF ACTION
### (Negligent Violation of the FCRA as to the Bureaus)

123.    Plaintiff incorporates the allegations contained in paragraphs numbered 1-114 above as if set forth here.

124.    This is an action for negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

125.    The Bureaus violated 15 U.S.C. § 1681i (a) by:

   a.   failing to maintain reasonable procedures with which to verify the disputed information in the credit file of the Plaintiff; and

   b.   failing to delete inaccurate information from the credit file of the Plaintiff after receiving actual notice of such inaccuracies and conducting reinvestigation.

126.    The Bureaus have negligently failed to comply with the Act.

127.    The failure of the Bureaus to comply with the Act include but are not necessarily limited to the following:

   a)   The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

   b)   The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

   c)   The failure to promptly and adequately investigate information which the Bureaus had notice was inaccurate;

   d)   The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

e)   The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised the Bureaus to delete;

f)   The failure to take adequate steps to verify information the Bureaus had reason to believe was inaccurate before including it in the credit report of the consumer; and

g)   The failure to provide notice of a dispute to the furnisher or, in the alternative, the failure to provide Plaintiff all relevant information received from the furnisher in response to a dispute.

128.   As a result of the conduct, action and inaction of the Bureaus, the Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

129.   The conduct, action and inaction of each Bureau was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

130.   The Plaintiff is entitled to recover reasonable costs and attorney's fees from each Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 1681o.

WHEREFORE, Plaintiff, Ronni L. Brown, an individual, demands judgment in her favor against each Bureau for damages together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681o.

### THIRD CAUSE OF ACTION
### (Willful Violation of the FCRA as to Furnisher)

131.   Plaintiff incorporates the allegations contained in paragraphs numbered 1-114 above as if set forth here.

132.     This is an action for willful violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

133.     Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

134.     Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

135.     The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the furnisher must report the results to any other agencies which were supplied such information.

136.     Furnisher violated 15 U.S.C. § 1681s-2 as described above, including, but not limited to, failing to fully and properly investigate the disputes of the Plaintiff, failing to review all relevant information regarding same, and failing to correctly report results of an accurate investigation to the credit reporting agencies.

137.     Furnisher continued to report this account on the Plaintiff's credit report after being notified of her disputes regarding the Account as described above.

138.     Specifically, Furnisher continued to report this account on the Plaintiff's credit report after being notified of her disputes regarding the age of the account, payment dates, incorrect balance, and status of the account.

139.     As a result of the conduct, action, and inaction of Furnisher, the Plaintiff suffered damage for the loss of credit, loss of the ability to purchase and benefit from credit, a chilling

effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

140.    The conduct, action, and inaction of Furnisher was willful, rendering it liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

141.    The Plaintiff is entitled to recover reasonable costs and attorney's fees from each Furnisher in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Ronni L. Brown, an individual, demands judgment in her favor against each Furnisher for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681n.

## **FOURTH CAUSE OF ACTION**

### **(Negligent Violation of the FCRA as to Furnisher)**

142.    Plaintiff incorporates the allegations contained in paragraphs numbered 1-114 above as if set forth here.

143.    This is an action for negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

144.    Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

145.    Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

146.    The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the furnisher must report the results to any other agencies which were supplied such information.

147.    Furnisher is liable to the Plaintiff for failing to comply with the requirements imposed on Furnisher of information pursuant to 15 U.S.C. § 1681s-2.

148.    After receiving each Dispute Notice from the Bureaus, Furnisher negligently failed to conduct a reinvestigation in good faith.

149.    A reasonable investigation would require a furnisher such as Furnisher to consider and evaluate a specific dispute by the consumer, along with all other facts, evidence and materials provided by the agency to the furnisher.

150.    The conduct, action and inaction of Furnisher was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

151.    As a result of the conduct, action and inaction of the Furnisher, the Plaintiff suffered damage for the loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

152.    The Plaintiff is entitled to recover reasonable costs and attorney's fees from Furnisher in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 1681o.

WHEREFORE, Plaintiff, Ronni L. Brown, an individual, demands judgment in her favor against Furnisher for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681o.

## **DEMAND FOR TRIAL BY JURY**

153.    Plaintiff demands a trial by jury for all claims and issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment from each Defendant as follows:

a)  For actual damages provided and pursuant to 15 U.S.C. § 1681o (a) be awarded for each negligent violation as alleged herein;

b)  For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

c)  For statutory damages provided and pursuant to 15 U.S.C. § 1681n (a);

d)   For statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

e)  For punitive damages provided and pursuant to 15 U.S.C. § 1681n (a)(2);

f)  For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n (a)(3), 15 U.S.C. § 1681o (a)(2) and 15 U.S.C. § 1640(a)(3);

g)  For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Dated:  March 24, 2021

**ZEIG LAW FIRM, LLC**
*s/ Justin Zeig*
Justin Zeig, Esq.
3475 Sheridan Street, Ste 310
Hollywood, FL 33021
Phone: (754) 217-3084
Fax: (954) 272-7807
Justin@zeiglawfirm.com